FILED by **SL** D.C.

Jan 11, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **21-60003-CR-RUIZ/STRAUSS**

18 U.S.C. § 1349
18 U.S.C. § 1014
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

CARLOS BELONE,

           **Defendant.**

_____/

## INFORMATION

The United States Attorney charges:

### GENERAL ALLEGATIONS

At all times material to this Information:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federal health care program that provided free or below-cost health care benefits to individuals who were sixty-five years of age or older or disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency the Center for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States

1

Code, Section 24(b).

3.      Medicare was subdivided into multiple program "parts." Medicare Part A covered health care services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME"), such as orthotic devices and wheelchairs.

### Durable Medical Equipment

4.      Orthotic devices were a type of DME that included rigid and semi-rigid devices, such as knee braces, back braces, shoulder braces, and wrist braces (collectively, "braces").

5.      DME companies, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

6.      Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers were required to abide by the Anti-Kickback Statute and other laws and regulations. Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

7.      Medicare reimbursed DME companies and other health care providers for services

and items rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

8. A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

9. A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment of the beneficiary's illness or injury and prescribed by a licensed physician, and accompanied by a completed prescription for braces and other Medicare-required documents (collectively referred to as "doctors' orders").

## The Small Business Administration

10. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

11. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

## The Paycheck Protection Program

12. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 and was designed to provide emergency financial assistance

to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

13. One source of relief that the CARES Act provided for was the authorization of up to $349 billion in forgivable loans to small businesses for payroll, mortgage interest, rent/lease, and utilities, through a program referred to as the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized up to $310 billion in additional PPP funding.

14. The PPP allowed qualifying small businesses and other organizations to receive PPP loans. Businesses were required to use PPP loan proceeds for payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a certain percentage of the PPP loan proceeds for payroll expenses.

15. The amount of a PPP loan that a small business was eligible to receive was determined by the number of employees employed by the business and the business's average monthly payroll costs.

16. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications. In the PPP loan application, the small business (through its authorized representative) had to state, among other things, its (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.

17. The SBA oversaw the PPP. However, individual PPP loans were issued by private, approved lenders who received and processed PPP applications and supporting documentation, and then made loans using the lenders' own funds, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

18. Bank 1 was a U.S. bank whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC").

**The Defendant and Related Entities**

19. R&S Pharmacy Inc. ("R&S Pharmacy") was a Florida corporation with its principal place of business in Broward County in the Southern District of Florida.

20. R&S DME Services, LLC ("R&S DME", collectively with R&S Pharmacy, "R&S") was a Florida limited liability company with its principal place of business in Broward County in the Southern District of Florida.

21. Defendant **CARLOS BELONE**, a resident of Broward County, Florida, was a co-owner and operator of R&S.

**COUNT 1**
**CONSPIRACY TO COMMIT HEALTH CARE FRAUD**
**(18 U.S.C. § 1349)**

1. Paragraphs 1 through 9 and 19 through 21 of the General Allegatons section of this Information are realleged and incorporated by reference as though fully set forth herein.

2. From in or around March 2018, and continuing through in or around July 2020, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

## CARLOS BELONE,

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with others known and unknown to the United States Attorney, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### **Purpose of the Conspiracy**

3.  It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) paying kickbacks and bribes in exchange for signed doctors' orders prescribed to Medicare beneficiaries for braces that were medically unnecessary, not eligible for reimbursement, and not provided as represented; (b) submitting and causing the submission of false and fraudulent claims to Medicare; (c) concealing and causing the concealment of false and fraudulent claims to Medicare; and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### **Manner and Means of the Conspiracy**

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

4.  **CARLOS BELONE** and his co-conspirators falsely certified to Medicare that R&S would comply with all federal laws and regulations, including that they would not knowingly

6

present and cause to be presented a false and fraudulent claim for payment by a federal health care program and that they would comply with the federal Anti-Kickback Statute.

5. **CARLOS BELONE** and his co-conspirators obtained access to thousands of Medicare beneficiaries by paying kickbacks and bribes to purported "marketers" who targeted beneficiaries with telemarketing campaigns and induced the beneficiaries to accept braces that were not medically necessary.

6. **CARLOS BELONE** and his co-conspirators paid kickbacks and bribes in exchange for doctors' orders for braces. In many instances, the braces ordered for these recruited beneficiaries were medically unnecessary. The doctors who signed the doctors' orders for braces purchased by defendant and his co-conspirators often signed them regardless of medical necessity, in the absence of a pre-existing doctor-patient relationship, without a physical examination, and/or frequently based solely on a short telephonic conversation or without any conversation with the Medicare beneficiary.

7. **CARLOS BELONE** and his co-conspirators disguised the nature and source of these kickbacks and bribes through fraudulent invoices that falsely described the payments as compensation for "marketing" or similar services.

8. **CARLOS BELONE** and his co-conspirators, through R&S, submitted and caused the submission of false and fraudulent claims to Medicare in the approximate amount of $5,695,977, and received Medicare reimbursement in the approximate amount of $2,535,941, for braces that were: (a) procured through the payment of kickbacks and bribes; (b) medically unnecessary and ineligible for Medicare reimbursement; and/or (c) not provided as represented.

9. **CARLOS BELONE** and his co-conspirators diverted fraud proceeds from the

scheme for their personal use and benefit, the use and benefit of others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
## FALSE STATEMENTS TO A FINANCIAL INSTITUTION
## (18 U.S.C. § 1014)

1. Paragraphs 10 through 19 and paragraph 21 of the General Allegatons section of this Information are realleged and incorporated by reference as though fully set forth herein.

2. On or about April 8, 2020, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**CARLOS BELONE,**

did knowingly make a false statement for the purpose of influencing the actions of a financial institution, that is, Bank 1, the accounts of which were insured by the Federal Deposit Insurance Corporation, in connection with a PPP loan application in the amount of $22,500 on behalf of R&S Pharmacy, in that the defendant represented in the loan application submitted to Bank 1 that R&S Pharmacy had an average monthly payroll of $9,000 and that R&S Pharmacy was not engaged in any activity that was illegal under federal, state, and local law, when in truth and in fact, as the defendant well knew, R&S Pharmacy did not have a payroll of $9,000 and R&S Pharmacy was engaged in activity that was illegal under federal, state and local law, in violation of Title 18, United States Code, Sections 1014 and 2.

## FORFEITURE
## (18 U.S.C. § 982)

1.      The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **CARLOS BELONE**, has an interest.

2.      Upon conviction of the violation of Title 18, United States Code, Section 1349 or 1014, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred, sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code Section 982(b)(1).

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

DANIEL KAHN, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

ALLAN MEDINA
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

By:
SARA CLINGAN
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

CARLOS BELONE,

_____Defendant._____/

CASE NO._____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)
___ Miami        ___ Key West
✓ FTL            ___ WPB        ___ FTP

New defendant(s)         Yes ___   No ___
Number of new defendants  ___
Total number of counts    ___

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:   (Yes or No)   No
   List language and/or dialect  _____

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                          (Check only one)
   I    0 to 5 days        ✓                Petty       ___
   II   6 to 10 days       ___              Minor       ___
   III  11 to 20 days      ___              Misdem.     ___
   IV   21 to 60 days      ___              Felony      ___
   V    61 days and over   ___

6. Has this case previously been filed in this District Court?   (Yes or No)   No
   If yes: Judge                             Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   Yes
   If yes: Magistrate Case No.               20-6264-SNOW
   Related miscellaneous numbers:            _____
   Defendant(s) in federal custody as of     _____
   Defendant(s) in state custody as of       _____
   Rule 20 from the District of              _____

   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?    Yes ___   No ✓

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?    Yes ___   No ✓

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?    Yes ___   No ✓

_____
SARA CLINGAN
DOJ TRIAL ATTORNEY
COURT ID NO. A5502508

*Penalty Sheet(s) attached

REV 6/5/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: CARLOS BELONE

**Case No**: 

Count #1:

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349

* **Max. Penalty**: Ten (10) years' imprisonment

Counts #2:

False Statements to a Financial Institution

Title 18, United States Code, Section 1014

***Max. Penalty**: Thirty (30) years' imprisonment

Count #:

***Max. Penalty**:

Count #:

***Max. Penalty**:

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: _____

### BOND RECOMMENDATION

DEFENDANT: CARLOS BELONE _____

   $250,000, 10% Cash Bond
   (Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)


                                             By: _____
                                                  Sara Clingan, DOJ Trial Attorney


Last Known Address: _____

   _____

   _____

What Facility:   _____

   _____

Agent(s):   Special Agent Jon Bent
            (FBI)  (SECRET SERVICE)  (DEA)  (IRS)  (ICE)  (**OTHER**)

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) Case No. |
| CARLOS BELONE, | ) |
|  | ) |
| *Defendant* | ) |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*